IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL VERDI, et al. | ) | CASE NO. 1:10-CV-01888 |
| | ) | |
| Plaintiffs | ) | JUDGE JAMES S. GWIN |
| | ) | |
| - vs - | ) | |
| | ) | PLAINTIFFS' MOTION FOR |
| DOMINO LOGISTICS CO. et al. | ) | SUMMARY JUDGMENT |
| | ) | AGAINST DEFENDANT |
| Defendants | ) | J. ROSS HAFFEY |

Plaintiffs, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby move for summary judgment in their favor against Defendant J. Ross Haffey on all issues, including specifically the issues of liability, damages, liquidated damages, and willfulness. As demonstrated below, there are no issues of material fact and Plaintiffs are entitled to summary judgment on all issues before this Court.

**INTRODUCTION**

This is an action for unpaid overtime compensation under the Fair Labor Standards Act (FLSA) 29 U.S.C. 201, et seq. and O.R.C. Chapter 4111. While the claims against Defendant Domino Logistics Co. (Domino) have been stayed as a result of Domino's pending Chapter 11 bankruptcy proceeding, the claims as to Defendant J. Ross Haffey are currently pending before this Court.

Plaintiffs each allege that during their employment with Defendants they were paid an hourly wage, regularly worked in excess of forty (40) hours per week, but were paid only straight time for their overtime hours. Defendants claim in their answer that Plaintiffs were exempt under the Motor Carrier Act exemption, 29 U.S.C. 213(b)(1).

Defendants have failed to provide initial disclosures as required by Civ. R. 26. Further, Defendants have failed to provide responses to discovery served November 2, 2010, including requests for admissions which, by operation of law, have all been deemed admitted. (See Exhibit 5, Affidavit of Richard T. Bush).

Plaintiffs believe that Defendants contend that Plaintiffs were exempt as loaders under the Motor Carrier Act exemption.

As demonstrated below, there are no issues of material fact that Plaintiffs were not loaders or otherwise exempt employees as defined by FLSA regulations. Rather, Plaintiffs Michael Verdi and James Yankie were employed exclusively as “switchers”, also known as “yardmen” or “hostlers”. Their duties consisted of using unregistered, unroadworthy hostler tractors to move trailers in and about Domino’s premises. Plaintiff Romanowski also worked primarily as a switcher, while also performing some duties as a nonexempt dispatcher. The duties performed by Plaintiffs have expressly been designated as nonexempt under FLSA regulations.

As discussed below, Plaintiffs are entitled to the full amount of their damages claimed, together with liquidated damages and attorney fees in an amount to be determined by the Court.

## FACTS

Plaintiffs were each employed by Defendants Domino Logistics Co. (Domino) and J. Ross Haffey (Haffey) during the three (3) year period prior to the filing of this action. Defendants Domino and Haffey both admit that they were employers of Plaintiffs within the meaning of the FLSA and O.R.C. Chapter 4113. (Complaint ¶¶ 4-5; Answer ¶ 1; Affidavit of Wade Romanowski (Romanowski Aff.) (Exhibit 1), ¶ 2; Affidavit of Michael Verdi (Verdi Aff. ) (Exhibit 2), ¶ 2; Affidavit of James Yankie (Yankie Aff.) (Exhibit 3), ¶ 2).[1]

Plaintiffs Verdi and Yankie worked exclusively as switchers, using unregistered and unroadworthy tractors to move trailers in and about Defendants' premises. (Verdi Aff. ¶ 3; Yankie Aff. ¶ 3).

Plaintiff Verdi worked at Defendants' terminal on South Sycamore Ave. in Jefferson, Ohio located adjacent to a plant operated by Smurfit Stone Container Corp. (Smurfit). Smurfit manufactured cardboard boxes which were transported to customers by Domino. Verdi regularly used an unregistered, unroadworthy semi tractor to shuttle trailers between Domino and Smurfit. He took empty trailers to Smurfit and backed into Smurfit's loading dock. Smurfit employees would load unassembled stacks of cardboard boxes onto the trailers. Verdi would then move the trailers to Domino's adjacent yard and drop them off. After dropping off the full trailer he would then pick up an empty trailer and start the process again. (Verdi Aff. ¶¶ 5-7, 10).

---

[1] Defendants' Answer includes two different paragraphs labeled "1". Reference herein is made to the second of those paragraphs, immediately following the heading "Answer".

Plaintiff Yankie performed the same duties as Verdi at the S. Sycamore Ave. location in Jefferson. In addition, Yankie also worked as a switcher at Domino's terminal and warehouse on Benefit Rd. in Ashtabula, Ohio. He merely shuttled trailers between the warehouse and Domino's yard on the same premises. The only notable difference was that at the warehouse the trailers were loaded by other Domino employees rather than Smurfit employees. (Yankie Aff. ¶¶ 4-8, 11).

Plaintiff Romanowski was employed by Defendants from on or about June 2000 to May 2009. During the period from 2000 to 2005 he was employed as a driver. However, in 2005, due to a medical condition he became disqualified from interstate driving. From that point forward he did no interstate driving. During the period relevant to this case, Romanowski worked eight (8) hours a day as a switcher at the S. Sycamore Ave. location in Jefferson, while also performing some duties there as a dispatcher. As a switcher, he performed the same duties in the same manner as performed by Verdi and Yankie. (Romanowski Aff. ¶¶ 2-8).

At no time did any of the Plaintiffs perform any loading of the trailers. Plaintiffs did not plan the loads, instruct anyone how to construct the loads, or inspect the loads. Their duties were merely to shuttle the trailers in and about the yards. (Romanowski Aff. ¶ 8; Verdi Aff. ¶ 7; Yankie Aff. ¶ 8).

During the period in question none of the Plaintiffs were subject to random drug or alcohol testing as required for drivers covered by the Motor Carrier Act. Nor were they required to take Department of Transportation medical exams. (Romanowski Aff. ¶ 9; Verdi Aff. ¶ 9; Yankie Aff. ¶ 10).

All of the Plaintiffs were paid hourly wages and worked work weeks of more than 40 hours, but were paid only straight time for the overtime hours. (Romanowski Aff. ¶ 11; Verdi Aff. ¶ 12; Yankie Aff. ¶ 13).

Each of the Plaintiffs complained to Domino management about not receiving time and one-half for overtime, to no avail. (Romanowski Aff. ¶ 12; Verdi Aff. ¶ 13; Yankie Aff. ¶ 15). According to Domino Supervisor Tom Ware, Defendant J. Ross Haffey was the person who directed that the yard drivers not receive overtime pay. (Yankie Aff. ¶ 15). Further, when Plaintiff Romanowski complained to Manager Tom Haffey about not receiving overtime pay, Haffey told him that if he didn't like it he should get another job. (Romanowski Aff. ¶ 12).

Smurfit loading dock employee Ron Jones confirms that all loading at the plant was done by Smurfit employees, and that Domino drivers did not load, inspect the loads, or tell Smurfit employees how to load. (Ron Jones Affidavit ¶¶ 1-5).

As noted above, Defendants provided neither initial disclosures, nor responses to Requests for Admissions, Interrogatories, and Requests for Production served on November 2, 2010.[2] Consequently, all of the following facts have been established for purposes of this case:

1) The primary duty of each of the Plaintiffs during the period from September 1, 2007 forward was moving trailers in and about Defendants' premises and/or moving trailers from loading docks of Smurfit-Stone Container to Defendants' premises.

---

[2] It should be noted that the initial disclosures and discovery responses were overdue long before Domino filed its bankruptcy petition on December 29, 2010. Moreover, Defendant Haffey has simply ignored the requests even after this Court vacated the short lived stay of proceedings against him.

2) During the period from September 1, 2007 forward, Plaintiffs used tractors which were not registered by the State authorities to perform their normal duties,

3) During the period from September 1, 2007 forward, Defendants did not perform such inspections as required by federal law for over the road commercial vehicles upon the tractors used by Plaintiffs to perform their normal duties

4) During the period from September 1, 2007 forward, none of the Plaintiffs exercised judgment and discretion in planning and building balanced loads or in placing , distributing, or securing pieces of freight in such a manner to ensure safety of operation of vehicles in interstate commerce.

5) During the period from September 1, 2007 forward, Plaintiffs did not perform safety sensitive duties under federal motor carrier regulations.

6) During the period from September 1, 2007 forward, Plaintiffs were not subjected to random drug or alcohol testing.

7) At least one employee of Defendants who performed the same regular duties as Plaintiffs did not possess a commercial drivers license.

8) During the period from September 1, 2007 forward, Plaintiffs were paid an hourly wage.

9) During the period from September 1, 2007 forward, Plaintiffs were not paid one and one-half times their regular hourly rate when they worked more than forty hours in a workweek.

10) The Ohio Department of Commerce performed an investigation and determined that Defendants' employees who performed the same duties performed by Plaintiffs during the period from September 1, 2007 forward were not exempt from overtime requirements.

**ARGUMENT**

INTRODUCTION

29 U.S.C. 207 requires that covered employees be paid one and one-half times their regular rate of pay for hours worked in excess of 40 per week. The overtime provisions are intended to compensate employees for the burdens of overtime work and to spread employment among the greatest number of workers by making overtime more expensive than straight time. E.g., *Walling v. Helmrich & Payne, Inc.* (1944), 323 U.S. 37, 40. Consistent with these remedial purposes, "the Act has been construed liberally to apply to the furthest reaches consistent with congressional direction". *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 210.

Accordingly, FLSA exemptions must be affirmatively pleaded and proven by the employer asserting them. E.g., *Jones v. Giles*, 741 F.2d 245, 248 (9th Cir. 1984). Such exemptions must be narrowly construed and an employer bears the heavy burden of establishing that an employee falls "plainly and unmistakenly within their terms and spirit". *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392.

**I. SUMMARY JUDGMENT MUST BE RENDERED ON THE ISSUE OF LIABILITY BECAUSE DEFENDANT HAFFEY HAS FAILED TO DISCLOSE ANY INFORMATION OR IDENTIFY ANY WITNESS TO ESTABLISH A DEFENSE. FURTHER, DEFENDANT HAFFEY HAS FAILED TO RESPOND TO REQUESTS FOR ADMISSION, THEREBY ADMITTING ALL RELEVANT FACTS.**

Defendants, in blatant disregard of Civil Rule 26, have failed to provide any initial disclosures of any witnesses or information. Civil Rule 37(c)(1) provides "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is

not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless". Where a party's disclosures are inadequate, it is proper to exclude any nondisclosed evidence. *Bessemer & Lake Erie R.R. Co., v Seaway Marine Transport*, 596 F.3d 357, 369 (6th Cir. 2009). Here, Defendant Haffey made no disclosures at all about any defense, much less any adequate disclosure. (Affidavit of Richard T. Bush (Bush Aff.), ¶¶ 6, 10, 12-13, 19).

Nor is there any good excuse. While there was certainly no obligation to do so, Plaintiffs' counsel twice reminded defense counsel that Defendants had not made initial disclosures (or responded to discovery). (Bush Aff., ¶¶ 12-13). Further, failure to disclose is not harmless, since it has deprived Plaintiffs of the opportunity for discovery, impeachment or rebuttal. In addition, Defendant Haffey has failed to respond to discovery requests, including requests for admission, served November 2, 2010. (Bush Aff. ¶¶ 7, 12-13, 19). Pursuant to Civ. R. 36(a)(3) and (b), the requests have been deemed admitted and conclusively established.

The evidence is uncontradicted that Plaintiffs were employed by Defendants and not paid overtime premiums for overtime worked. The burden was upon Defendants to establish an exemption defense. In the absence of any evidence to support such a defense, Plaintiffs are entitled to summary judgment against Defendant Haffey.

## II. SUMMARY JUDGMENT MUST BE GRANTED BECAUSE PLAINTIFFS' AFFIDAVITS ESTABLISH THAT THERE ARE NO GENUINE ISSUES OF MATERIAL FACT TO SUPPORT ANY CLAIMED EXEMPTION.

Defendant's failure to disclose and deemed admissions suffice to establish liability since Defendant cannot meet his burden of establishing an exemption. Nevertheless, Plaintiffs also submit affirmative evidence establishing that the duties they performed are not exempt. (See affidavits of Romanowski, Verdi, Yankie and Jones).

Defendants have pleaded that Plaintiffs were exempt under the Motor Carrier Act exemption of 29 U.S.C. 213(b)(1), which exempts "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49". The motor carrier exemption potentially applies to four categories of employees, i.e., certain drivers, drivers' helpers, loaders, and mechanics who perform duties affecting the safety of operation of commercial motor vehicles in interstate commerce. See 29 C.F.R. 782.3, 782.4, 782.5 and 782.6. In the context of the Motor Carrier Act, interstate transportation is defined as transportation crossing state, national, or territorial lines. 49 U.S.C. 13501. This definition is different and more narrow than the definition of interstate commerce for purposes of FLSA coverage. *Helderman v. Renee's Trucking,* 2008 WL 2229762 (S.D. Ill. 2008).

The affidavits establish that each of the Plaintiffs worked as so-called "hostlers", yardmen, or switchers, whose primary duty was moving trailers in and about Defendants' terminals. For nearly 68 years it has been established that such employees are not exempt. Thus, 29 C.F.R. 782.3(b) states:

> "It has been held that so-called 'hostlers' who 'spot' trucks and trailers at a terminal dock for loading and unloading are not exempt as drivers merely because as an incident of such duties they drive the trucks and trailers in and about the premises of the trucking terminal. *Keegan v. Ruppert* (S.D. N.Y. [1943]), 7 Labor Cases, par. 61,726, 6 Wage Hour Rept. 676, c.f. *Walling v. Silver Fleet Motor Express*, 67 F. Supp. 846."

The decision in *Keegan v. Ruppert, supra*, cited in the regulation, also sheds light on the meaning of "in and about the premises", stating: "employees who were engaged in shifting trucks, even though in doing such work they sometimes drove them on the streets in front of the garages in which they were house, are entitled to recover". 7 Labor Cases, par. 61, 726, page 65,066. (copy attached as Exhibit 12).

Similarly in *Gordon's Transports, Inc.*, 162 F.2d 203 (6th Cir. 1947), the court affirmed a determination that terminal and warehouse workers performing the duties of "breakout men", "wheelers" and "hostlers" were not exempt from overtime.

More recently, in *Billingslea v. Southern Freight, Inc.*, 669 F.Supp.2d 1369 (N.D. Ga. 2010), the argument that hostlers are exempt under Motor Carrier Act was again rejected. Notably, the employees in *Billingslea* did have some involvement in inspecting loads and trailers, but were still held non-exempt because they did not exercise discretion and judgment in planning and building a balanced load or in placing, distributing, or securing freight in such a manner that the safe operation of vehicles in interstate commerce would not be jeopardized. Here, Plaintiffs had no involvement in placing or building loads, much less discretion involving safety of operations.[3]

---

[3] It should be noted that not all loaders are exempt; only those who exercise such discretion in building loads as to impact upon the safety of interstate commerce. Thus, employees who load lightweight items such as boxes of shoes, or load coal trucks

Plaintiffs' duties are clearly defined as nonexempt under longstanding regulations and case law. They are. therefore, entitled to summary judgment on the issue of liability.

## III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF LIQUIDATED DAMAGES.

Under 29 U.S.C. 216 an employee is entitled to recover liquidated damages in an amount equal to the employee's unpaid wages. Liquidated damages are compensation, not a penalty or punishment, and are usually mandatory. *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832 (6th Cir. 2002). Under 29 U.S.C. 260, a court has discretion to reduce or not award liquidated damages, but only if the employer proves "that the act or omission giving rise to such action was in good faith *and* that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act". (Emphasis added).

To establish the good faith defense to liquidated damages an employer must establish not only subjective good faith but also an objectively reasonable basis for concluding that the acts or omissions in question were lawful. *Elwell v. University Hospitals Home Care Services*, *supra*; *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971). Absent such a showing the Court has no power or discretion to reduce the employer's liability for double damages. *Id.* Even if the employer subjectively intended to comply with the Act, the act or omission must be objectively reasonable under the FLSA. *Thomas v. Howard University Hospital*, 39 F.3d 370, 373 (D.C. Cir. 1994). In

---

via conveyors would not be exempt because their activities would not affect safety of operations. See 29 C.F.R. 782.3. Thus, even if Plaintiffs were loaders (which they were not) they would not be exempt.

most cases an employer will be able to satisfy the reasonable grounds requirement only where it relies upon a reasonable, albeit erroneous, interpretation of the FLSA or its regulations. *Id*. Even where an employer meets such burdens there is a strong presumption favoring liquidated damages.[4] *Elwell v. University Hospitals, supra*, 276 F.3d at 840.

There is no evidence that Defendants made any good faith efforts to comply with the FLSA. Indeed, it is clear Defendants did not treat Plaintiffs as if they held safety sensitive motor carrier duties. Nor is there any objective justification for claiming Plaintiffs to be exempt. Thus this Court should award liquidated damages.

## IV. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF WHETHER DEFENDANTS VIOLATIONS WERE WILLFUL.

The issue of willfulness relates to the statute of limitations. Where a willful violation exists, the statue of limitations for recovery extends back three years rather than two. In *McLaughlin v. Richland Shoe*, 486 U.S. 128 (1988), the court held that a willful violation exists where an employer either knew or showed reckless disregard as to whether its conduct was lawful. In this analysis the actions of any of its supervisors in imputed to the employer. E.g., *Cavin v. Honda of Am. Mfg. Inc.*, 346 F.3d 713, n. 8 (6th Cir. 2003); *Marshall v. J.C. Penney Co.*, 464 F.Supp. 1166 (N.D. Ohio 1979); *Majchrzak v. Chrysler Credit Corp.*, 537 F.Supp. 33, 36 (E.D. Mich. 1981).

The uncontradicted facts establish that the violations here were willful. Each of the Plaintiffs complained to Domino about not receiving overtime compensation.

---

[4] In the exceptional case that a court does not award liquidated damages, it must award interest. *McClanahan v. Mathews*, *supra*, 440 F.2d at 326.

Defendants never offered any rationale for denying overtime compensation to the Plaintiffs. This despite the fact that Domino, as of 2007, was a large company with approximately ten million dollars in annual sales, four hundred trailers, and seventy-five tractors, and that its principal, J. Ross Haffey, is a lawyer. (See, affidavit and statement of J. Ross Haffey in support of Chapter 11 petition and first day motions, United States Bankruptcy Court Northern District of Ohio Eastern Division Case No. 10-22529, In re *Domino Logistics, Inc.*, attached hereto as Exhibit 11, ¶¶ 1, 6, 10). For a multi-million dollar company, owned and operated by an attorney, to fail to take reasonable steps to comply with the law despite repeated employee complaints from workers putting in large amounts of overtime, is the epitome of a willful violation.

## V. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF DAMAGES.

Prior to suit, on August 10, 2010, Plaintiffs' counsel served upon Domino a statutory request for wage and hour records. By law, such records were to be provided within thirty days. Defendants ignored those requests and, after badgering, eventually produced Plaintiffs' wage and hour records on November 19, 2010. (Bush Aff. ¶¶ 2-9). The wage and hour records, while somewhat difficult to read, are relatively straight forward and set forth Plaintiffs' hourly rates, hours worked, and amounts paid.[5]

Utilizing these records, Plaintiffs' counsel has calculated each of the Plaintiff's damages based upon the unpaid 50% premium ("half-time") for overtime hours worked.

---

[5] The records also confirm that Plaintiffs were paid straight time for overtime.

(Bush Aff. ¶ 20 and Ex. 8). Utilizing the three year statute of limitations, the respective wages and liquidated damages for each of the Plaintiffs is as follows:

| | |
|---|---|
| Romanowski: | $36,250.26 |
| Verdi: | $15,787.28 |
| Yankie: | $2,274.36 |

Plaintiffs are entitled to summary judgment for these amounts.

**VI. PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEY FEES AND EXPENSES.**

An award of attorney fees to a prevailing FLSA plaintiff is mandatory, and need not be proportionate to damages. E.g., *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994). Such attorney fees should be determined via a fee petition after determination of liability.

**CONCLUSION**

For all the above reasons Plaintiffs are entitled to summary judgment in their favor on the issues of liability, liquidated damages, willfulness, and damages. Accordingly, Plaintiffs hereby request that the Court award judgment in favor of each of the Plaintiffs for the damages set forth herein, together with attorney fees and expenses to be determined upon fee petition to this Court.

Respectfully submitted,

GREEN HAINES SGAMBATI CO., L.P.A.

By s/RICHARD T. BUSH

RICHARD T. BUSH (#0020899)
Attorney for Plaintiffs
16 Wick Avenue, Suite 400
P.O. Box 849

Youngstown, Ohio 44501-0849
Telephone: (330) 743-5101
E-Mail: rbush@green-haines.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of March, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

GREEN HAINES SGAMBATI CO., L.P.A.

By s/RICHARD T. BUSH
RICHARD T. BUSH (#0020899)
Attorney for Plaintiffs

**EXHIBITS**

1) Affidavit of Wade Romanowski;

2) Affidavit of Michael Verdi;

3) Affidavit of James Yankie;

4) Affidavit of Ron Jones;

5) Affidavit of Richard T. Bush;

6) Plaintiffs' First Set of Requests for Admissions, Interrogatories and Requests for Production to Defendants;

7) Payroll records;

8) Damage calculations;

9) December 17, 2010 letter from Plaintiffs' counsel to defense counsel;

10) January 3, 2011 letter from Plaintiffs' counsel to defense counsel;

11) Affidavit of J. Ross Haffey, filed in In re *Domino Logistics, Inc.*, U.S. Bankruptcy Ct. N.D. Ohio E.D., Case No. 10-22529; and

12) *Keegan v. Ruppert*, 7 Labor Cases ¶ 61,726, 6 Wage Hour Rept. 676 (S.D. N.Y. 1943).