UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                    :
Michael J. Verdi, *et al*,                          :
                                                    :        CASE NO. 1:10-CV-1888
                      Plaintiffs,                   :
                                                    :
         v.                                         :        OPINION & ORDER
                                                    :        [Resolving Doc. Nos. 21, 25, 32]
Domino Logistics Co., *et al*,                      :
                                                    :
                      Defendants.                   :
                                                    :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        In this Fair Labor Standards Act ("FLSA") case, the Plaintiffs move for summary judgment

on their claims that Defendant J. Ross Haffey, the principal of  Domino Logistics Co.[1/] and the

Plaintiffs' former employer, improperly denied them overtime pay.  [Doc. 21.]  Defendant Haffey

acknowledges that he did not pay the Plaintiffs overtime, but argues instead that they were exempt

from overtime under the Motor Carrier Act, 29 U.S.C. § 213(b)(1).  [Doc. 29 at 2.]

        For the following reasons, the Court **GRANTS** the Plaintiffs' motion for summary judgment.

## I. Background

        The Motor Carrier Act exempts from the overtime provisions of the FLSA employees who

---

        [1/]  The case is stayed as to Defendant Domino Logistics pending resolution of its Chapter 11 bankruptcy case.
[Doc. 19.]

Case No. 1:10-CV-1888
Gwin, J.

(1) work as drivers, driver's helpers, loaders, or mechanics, and (2) directly affect the safety of operation of motor vehicles in transporting property in interstate commerce. *See Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 904 (6th Cir. 2002) (citing 49 U.S.C. § 31502(b)(2)); 29 C.F.R. § 782.2(b)(1)-(2). The facts that follow are relevant to this inquiry.

Domino Logistics was a large, Midwestern trucking company with terminals throughout Northeast Ohio. In 2007, Domino was a multimillion-dollar business with hundreds of trucks in its fleet; by 2011, it was bankrupt. [Doc. 21 at 13.] Domino employed Plaintiffs Wade Romanowski, Michael Verdi, and James Yankie in various capacities at its Jefferson, Ohio and Ashtabula, Ohio locations. All three employees were laid off in 2009.

Plaintiff Wade Romanowski worked for Domino from 2000 to 2009. Romanowski was originally hired as a truck driver, but was medically disqualified from interstate driving in 2005. [Doc. 30-1 at 1.] From 2007 forward, Romanowski worked as a "switcher" (sometimes referred to in industry parlance as a "yardman" or "hostler") and as a dispatcher. As a switcher, Romanowski moved trailers in and about Domino's Jefferson lot. Romanowski also drove a semi-tractor to shuttle trailers between Domino's lot and Smurfit, the packaging manufacturer next door. Romanowski would take empty trailers to Smurfit's loading dock, wait while Smurfit employees loaded products into the trailers, and then drive the trailers 100-150 yards back to Domino. The "great majority of the time" the semi-tractors Romanowski used were not registered vehicles and did not have working turn signals or flashers. [Doc. 21-1.]

Plaintiff James Yankie worked for Domino from February 2008 to May 2009; Plaintiff Michael Verdi worked from March 2007 to May 2009. Like Romanowski, Yankie and Verdi also worked as switchers and shuttled trailers between Domino and Smurfit. [Doc. 21-2; Doc. 21-3.]

-2-

Case No. 1:10-CV-1888
Gwin, J.

There is some dispute whether the Plaintiffs performed pre- and post-trip inspections of the trailers.  The Plaintiffs say that, during the period relevant to this case, they did not perform safety inspections, such as checking the lights, signals, flashers, tires, and brakes, and did not document any safety inspections.  The only inspections the Plaintiffs did, they say, "was to inspect the skin of the trailers to see whether there was any large hole which would permit water to get in and damage the [cargo]."  [Doc. 30-1; Doc. 30-2; Doc. 30-3.]

Responding, Defendant Haffey says that switchers performed basic safety inspections. [Doc. 29 at 3-4.]  Domino's terminal manager says that switchers were tasked with inspecting trailers for safety concerns and affixing red flags to problematic trailers, and were expected to observe the interior of the loaded trailers for safety problems.  [Doc. 29-5 at 1.]  Defendant Haffey also provides a "list of switcher duties" that Plaintiff Michael Verdi signed on May 22, 2009, the month before he was laid off.  This document says that switchers must "check lights, the condition of the trailer holes, doors and tires" and make sure the trailers are "clean, swept and in good shape."  [Doc. 29-1.]

Against this backdrop, the Plaintiffs move for summary judgment on their claims that Defendant Haffey improperly denied them overtime pay.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a grant of summary judgment is proper if "the movant shows there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the Court "considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party."  *LensCrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005) (citations omitted).

Case No. 1:10-CV-1888
Gwin, J.

The moving party bears the initial burden to show the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to come forward with some probative evidence to support its claim. *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994).

Exemptions under the FLSA are to be construed narrowly against the employer asserting them; the employer has the burden of proving entitlement to the exemption. *Brock v. Louvers & Dampers, Inc.*, 817 F.2d 1255, 1256 (6th Cir. 1987). If the underlying material facts are undisputed, the decision whether an employee is exempt is a question of law. *Martin v. W.E. Monks & Co.*, No. 92-3739, 1993 WL 300332, at *2 (6th Cir. Aug. 3, 1993).

### III. Analysis

As discussed above, the Motor Carrier Act exempts from the FLSA's overtime-wage requirement, 29 U.S.C. § 207(a)(1), those employees whose activities directly affect the safety of operation of that motor carrier. *Vaughn*, 291 F.3d at 904. Only employees who work as "drivers, driver's helpers, loaders, and mechanics" are exempt: "[N]o other classes of employees . . . perform duties directly affecting such 'safety of operation.'" 29 C.F.R. § 782.2(b)(1). The Defendant has not attempted to analogize the work the Plaintiffs performed as "switchers" to any of the four categories of employees that, as a general matter, are exempt from overtime. In any event, because the Plaintiffs' jobs were not akin to drivers, driver's helpers, loaders, or mechanics, the Plaintiffs are entitled to summary judgment.

The Plaintiffs in this case did not perform the work of drivers or driver's helpers. A "driver," is "an individual who drives a motor vehicle in transportation . . . in interstate or foreign commerce." 29 C.F.R. § 782.3(a). Switchers (or hostlers), "who 'spot' trucks and trailers at a terminal dock for

-4-

Case No. 1:10-CV-1888
Gwin, J.

loading and unloading are not exempt as drivers merely because as an incident of such duties they drive the trucks and tractors in and about the premises of the trucking terminal."  29 C.F.R. § 782.3(b).

At employed as switchers, the main vehicles the Plaintiffs drove were hostler tractors that "were not registered vehicles and did not have working turn signals or flashers."  Moreover, nothing in the record suggests that the Plaintiffs drove "over the public highways" when shuttling trailers between Domino and the "adjacent" Smurfit facility.  [Doc. 29 at 2]; *see also Billingslea v. Southern Freight, Inc.*, 699 F. Supp. 2d 1369, 1377 n.14 (N.D.Ga. 2010) (noting "the importance of operating a vehicle on public roads for an employee to qualify as a 'driver'").  Finally, although Plaintiff Romanowski was originally hired as a truck driver, he was medically disqualified from driving in 2005 and says that after August 2007 his duties "were limited to dispatching and switching."  [Doc. 30-1 at 2.]  Defendant Haffey says from "2005 forward [Romanowski] did interstate driving on an as needed basis," [Doc. 29 at 3], but points to no specific facts in the record to support this contention, such as a driver's log, route-assignment sheet, or cargo-delivery receipt signed by Romanowski.

As to "driver's helpers," only employees who actually ride on a motor vehicle being operated in interstate commerce can be classified as driver's helpers, *see* 29 C.F.R. § 782.4(c), and the Defendant makes no such contention here.

Nor did the Plaintiffs in this case perform the work of loaders or mechanics.  A "loader" is an employee "whose duties include . . . the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country."  29 C.F.R. § 782.5(a).  Loaders are responsible "for exercising judgment and discretion in planning and building a balanced load or in

Case No. 1:10-CV-1888
Gwin, J.

placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." *Id.* (citation omitted). The Defendant says that the Plaintiffs "supervised the loading of trailers," but again points to no specific fact in the record supporting this point. [Doc. 29 at 3.] Moreover, a signed affidavit from a Smurfit employee says: "The Domino drivers did not do any of the loading. Nor did they inspect the loads or tell us how to do the loading. After the loads were completed by Smurfit employees, including myself, the Domino drivers drove them a short distance to Domino's nearby terminal." [Doc. 21-4 at 2.]

A "mechanic" is an employee "whose duty it is to keep motor vehicles . . . in a good and safe working condition." 29 C.F.R. § 782.6(a). The Plaintiffs say they did not perform safety inspections of the trucks or trailers they shuttled around the lots. Responding, the Defendant says that Plaintiffs were required to inspect trailers for safety concerns and affix red flags to safety issues. In support of this contention, Defendant Haffey provides a "list of switcher duties." This document says that switchers must "check lights, the condition of the trailer holes, doors and tires."

Assuming this "list of switcher duties" accurately describes the Plaintiffs' work (as the Court must on Plaintiffs' motion for summary judgment), the Court finds as a matter of law that these limited inspections are insufficient to convert the Plaintiffs from switchers to mechanics. "[M]echanics . . . actually do inspection, adjustment, repair, or maintenance work on the motor vehicles themselves" and are "directly responsible for creating or maintaining physical conditions essential to the safety of the vehicles." *Id.* To the extent that Plaintiffs inspected the trailers, they at no point performed any hands-on mechanical labor. Nor did they have discretion or authority to "install, adjust, repair, or maintain any parts on the trucks and trailers." *See Billingslea*, 699 F. Supp.

Case No. 1:10-CV-1888
Gwin, J.

2d at 1379.  Thus, because at most the Plaintiffs performed cursory inspections of the trailers and

were not directly responsible for maintaining the trailers, they are not mechanics as a matter of law.

**IV. Conclusion**

Accordingly, because the Defendant has failed to prove that the Plaintiffs performed the work

of either drivers, driver's helpers, loaders, or mechanics, and that such work directly affected the

safety of operation of motor vehicles in transporting property in interstate commerce, the Court

**GRANTS** summary judgment to the Plaintiffs.

As to damages, the Plaintiffs assert that a three-year period is appropriate because the

Defendant's violations were willful.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130

(1988).  The Plaintiffs say their repeated complaints to Defendant Haffey about the lack of overtime

pay were met with "indifference and hostility." [Doc. 30 at 15.]  The Defendant makes no effort to

dispute this claim or challenge the Plaintiffs' proposed liquidated-damages amounts.  The Court

therefore **AWARDS**:

(1) Plaintiff Wade Romanowski:  $36,250.26

(2) Plaintiff Michael Verdi:  $15,787.28

(3) Plaintiff James Yankie:  $2274.36

Finally, the Court **DENIES** as moot the Plaintiffs' motion to strike, [Doc. 25], and **DENIES**

Defendant Haffey's motion to reconsider the Court's order imposing sanctions for failing to appear

at a status conference and failing to notify opposing counsel or the Court of his absence.  [Doc. 32.]

The Defendant now says that the absence was an oversight, but offers no reason why he failed to

offer this excuse to the Court in the forty-six days while the motion for sanctions was left pending

and unopposed.

-7-

Case No. 1:10-CV-1888
Gwin, J.

IT IS SO ORDERED.


Dated:  June 16, 2011                          s/          *James S. Gwin*
                                               JAMES S. GWIN
                                               UNITED STATES DISTRICT JUDGE